# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

ANDRE RAYSHAWN THOMAS,

Defendant-Appellant.

UNPUBLISHED
July 28, 2015

No. 320329
Wayne Circuit Court
LC No. 13-006765-FC

Before: SAWYER, P.J., and DONOFRIO and BORRELLO, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of three counts of assault with intent to commit murder, MCL 750.83, intentional discharge of a firearm at a dwelling or occupied structure, MCL 750.234b, possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b, and possession of a firearm by a person convicted of a felony (felon-in-possession), MCL 750.224f. Defendant was sentenced to 285 to 600 months' imprisonment for each assault with intent to commit murder conviction, two to four years' imprisonment for the discharge of a firearm at a building conviction, two years' imprisonment for the felony-firearm conviction, and two to five years' imprisonment for the felon-in-possession conviction. We affirm in part and remand.

This case arises from a shooting that occurred on May 7, 2013, at Jawana Honeycutt's house located on Prest in Detroit. Honeycutt and her boyfriend, Aaron Brown, had just returned to her house with pizza, when they were ambushed by a couple shooters from across the street. Brown was shot in the thigh, and one of Honeycutt's children, who was inside the house at the time, was shot in the chest. Defendant's identity as the shooter was the main issue at trial.

The prosecution's theory at trial was that defendant, who lived with Clarice Hastings, got angry when Brown texted an "intimate" picture of himself to Hastings. As a result, defendant threatened Brown, learned his whereabouts, recruited his nephew (codefendant Deshawn Kelso) to assist, and ambushed Brown and Honeycutt.

## I. QUESTIONING OF JURORS

Defendant first argues that the trial court erred when it declined to question the remaining jurors after one juror, Juror 2, indicated that he knew Brown 14 years before trial.

-1-

Because defendant did not request that the remaining jurors be questioned, the issue is not preserved. See *People v Jackson*, 292 Mich App 583, 592; 808 NW2d 541 (2011). This Court reviews unpreserved issues for plain error affecting the defendant's substantial rights. *Id.* "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). With regard to the third element, the defendant must show that he was prejudiced, or that the error affected the outcome in the trial court. *Id.* Finally, this Court reverses "only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id.* (citation and quotation marks omitted; alteration in original).

A defendant has the right to a fair and impartial jury. *People v Miller*, 482 Mich 540, 550; 759 NW2d 850 (2008). "The trial court must take appropriate steps to ensure that jurors will not be exposed to information or influences that could affect their ability to render an impartial verdict based on the evidence admitted in court." *Jackson*, 292 Mich App at 592. However, "[t]he burden is on the defendant to establish that the juror was not impartial or at least that the juror's impartiality is in reasonable doubt." *Miller*, 482 Mich at 550. Furthermore, "due process does not require a new trial every time a juror has been placed in a potentially compromising situation." *Jackson*, 292 Mich App at 592-593 (citations and quotation marks omitted).

During its deliberations, the jurors sent a note to the trial court stating, "[W]e just found out that a juror played baseball on the same team as Aaron Brown as a child. He has not had contact since childhood, and he said it will not affect his decision. Is this a problem?" The trial court questioned Juror 2 regarding his contact with Brown. Juror 2 stated that he used to play baseball on the same team as Brown when they were 12 years old, which was approximately 14 years before the trial. Juror 2 explained that he only discussed baseball with Brown and did not have a relationship with Brown outside of baseball. Juror 2 had not seen Brown for 14 years. Juror 2 stated that the fact that he knew Brown as a child would not affect his ability to decide the case objectively. The court ruled that Juror 2 would remain on the jury since the juror had not seen Brown in 14 years and did not recall Brown's name at the beginning of trial when the trial court asked if anyone knew any of the witnesses. The court did not question the remaining jurors.

The trial court did not err when it refused to discharge Juror 2 or question the remaining jurors regarding whether, and to what extent, Juror 2 discussed Brown. Juror 2 had not seen Brown for 14 years before the trial. He did not have a relationship with Brown outside of playing baseball as a child. In addition, Juror 2 stated that his contact with Brown as a child would not affect his ability to fairly decide the case. There is no indication that the other jurors were exposed to any improper influence or that their ability to make a fair and impartial decision was compromised by Juror 2. See *Miller*, 482 Mich at 550; *Jackson*, 292 Mich App at 592. Therefore, the trial court did not err in declining to dismiss Juror 2 from the jury and failing question the remaining jurors. See *Miller*, 482 Mich at 550; *Jackson*, 292 Mich App at 592. Consequently, defendant's related claim that defense counsel was ineffective for failing to object to the trial court's handling of the matter also is unsuccessful. See *People v Ericksen*, 288 Mich

App 192, 201; 793 NW2d 120 (2010) ("Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel.").

## II. RIGHT TO CONFRONTATION

Defendant argues that the trial court improperly admitted hearsay evidence in violation of his right to confront the witnesses against him.

Defendant first specifically claims that the trial court erred in admitting the text messages exchanged between defendant and Honeycutt's sister, Anteneta Fleming. This Court reviews the issue of whether the evidence presented at trial violated a defendant's right to confront the witnesses against him de novo. See *People v Nunley*, 491 Mich 686, 697; 821 NW2d 642 (2012).

The Sixth Amendment of the United States Constitution, as applied to the states through the Fourteenth Amendment, provides that "'[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him.'" *People v Buie*, 285 Mich App 401, 407-408; 775 NW2d 817 (2009), quoting US Const, Am VI. The Confrontation Clause applies, not only to in-court testimony, but also to out-of-court statements introduced at trial. *Crawford v Washington*, 541 US 36, 50-51; 124 S Ct 1354; 158 L Ed 2d 177 (2004). Even then, only out-of court statements that are *testimonial* implicate the Confrontation Clause. *Id.* at 50-52; *People v Taylor*, 482 Mich 368, 377; 759 NW2d 361 (2008). Furthermore, the Confrontation Clause bars the admission of these out-of-court testimonial statements only when the declarant is unavailable to testify and where defendant did not have a prior opportunity to cross-examine the declarant. *Crawford*, 541 US at 59, 68.

Defendant's right to confrontation was not violated when Fleming testified regarding the text messages she exchanged. Most importantly, Fleming described the other declarant in this text message conversation as being defendant.[1] She testified that the other person identified himself as "Dre," and after some follow up questions, Fleming determined that Dre was indeed defendant. Thus, the conversation did not run afoul of the Confrontation Clause because Fleming was available to testify regarding her out-of-court statements, and she identified that the other participant was defendant, himself. Moreover, because the text conversation involved *nontestimonial* statements, the Confrontation Clause was not implicated. *Taylor*, 482 Mich at 377, citing *Davis v Washington*, 547 US 813, 821; 126 S Ct 2266; 165 L Ed 2d 224 (2006). In *Taylor*, the Michigan Supreme Court determined that certain statements were nontestimonial "because they were made informally to an acquaintance, not during a police interrogation or other formal proceeding, or under circumstances indicating that their primary purpose was to establish or prove past events potentially relevant to later criminal prosecution." *Taylor*, 482

---

[1] Defendant seems to imply that the other declarant was Martez Wallace, who was the name the other phone was registered to. However, defendant fails to acknowledge that Fleming testified that the person identified himself as defendant to her and that defendant was found with this phone on his possession when he was arrested.

Mich at 378 (quotation marks and citations omitted). Here, the same can be said about the text exchange between Fleming and defendant.

Defendant next claims that his right to confrontation was violated when the trial court admitted testimony regarding the contents of the phone and text message conversations between Brown and someone using Hastings's phone. While defendant objected to the admission of this evidence on the basis of it being inadmissible as hearsay, he never argued the evidence was inadmissible as violative of the Confrontation Clause. Because an objection based on one ground is insufficient to preserve an appellate attack on another ground, *People v Asevedo*, 217 Mich App 393, 398; 551 NW2d 478 (1996), the specific confrontation issue raised on appeal is not preserved. This unpreserved constitutional issue is reviewed for plain error affecting defendant's substantial rights. *Carines*, 460 Mich at 764.

Defendant cannot establish any plain error. Like before, the communications between Brown and the person using Hastings's phone were not testimonial. As a result, the Confrontation Clause was not implicated. See *Taylor*, 482 Mich at 378; *People v Bennett*, 290 Mich App 465, 483; 802 NW2d 627 (2010).

## III. COURT COSTS

Defendant next argues that the trial court lacked statutory authority to impose court costs. Because defendant did not challenge the trial court's imposition of court costs before the trial court, this issue is not preserved, and our review is limited to plain error affecting defendant's substantial rights. *Carines*, 460 Mich 750, 752-753, 763-764; 597 NW2d 130 (1999).

At the time defendant was sentenced, MCL 769.1k(1)(b)(*ii*) authorized the trial court to impose costs. However, in *People v Cunningham*, 496 Mich 145, 158; 852 NW2d 118 (2014), our Supreme Court held "that MCL 769.1k(1)(b)(*ii*) does not provide courts with the independent authority to impose 'any cost.' Instead, . . . MCL 769.1k(1)(b)(*ii*) provides courts with the authority to impose only those costs that the Legislature has separately authorized by statute." None of the statutes defendant was convicted of independently authorizes an award of costs upon conviction. But after our Supreme Court decided *Cunningham*, the Legislature amended MCL 769.1k. See 2014 PA 352. As amended, MCL 769.1k(1)(b)(*iii*) allows courts to impose "any cost reasonably related to the actual costs incurred by the trial court." The amended statute became effective on October 17, 2014, but applies to all fines, costs, and assessments imposed under MCL 769.1k before June 18, 2014, and after the effective date of the amendatory act. *People v Konopka*, ___ Mich App ___; ___ NW2d ___ (2015) (Docket No. 319913, issued March 3, 2015), slip op, p 6. The amended statute "authorizes the imposition of costs independently of the statute for the sentencing offense." *Id.*, slip op at 7. Because this case was on appeal when the amended version of MCL 769.1k was adopted, and defendant was sentenced on January 30, 2014, the amended version of MCL 769.1k applies to the present case. *Id.*, slip op at 6. Thus, the trial court's cost award is authorized by the amended version of MCL 769.1k(1)(b)(*iii*). However, notwithstanding the trial court's authority to impose court costs, remand is necessary to determine "the factual basis for the costs imposed pursuant to MCL 769.1k(1)(b)(*iii*)." *Id.*, slip op at 16.

## IV. STANDARD 4 BRIEF

Defendant makes several arguments in his Standard 4 brief, but as discussed below, none of them has any merit.

## A. SUFFICIENCY OF THE EVIDENCE

Defendant first argues in his Standard 4 brief that there was insufficient evidence to identify him as the perpetrator of the crime. This Court reviews a challenge to the sufficiency of the evidence to support a defendant's convictions de novo. *People v Henderson*, 306 Mich App 1, 8; 854 NW2d 234 (2014). "In reviewing the sufficiency of the evidence, this Court must view the evidence in the light most favorable to the prosecution and determine whether a rational trier of fact could find that the essential elements of the crime were proved beyond a reasonable doubt." *Id*. at 9.

Identity of the defendant as the perpetrator of the crime is always an essential element of a crime. *People v Oliphant*, 399 Mich 472, 489; 250 NW2d 443 (1976). "'Circumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime.'" *Jackson*, 292 Mich App at 587 (citation omitted).

There was sufficient circumstantial evidence presented at trial to establish defendant's identity as one of the shooters. There was evidence that defendant and Hastings had at least one child together and lived in the same house located on Ashton in Detroit. Brown, who was unaware of any relationship between Hastings and defendant at the time, texted some nude pictures of himself to Hastings. There was further evidence that after this picture was sent, a man called Brown using Hastings's cellular phone. The man told Brown that Brown had disrespected him and that he wanted to kill Brown. Given that there was evidence that defendant and Hastings had a relationship together and were living together, the jury could reasonably infer that defendant got access to her phone, saw the texts that Brown had sent Hastings, got angry, and was the one who called Brown back, threatening to kill him. Further, Fleming exchanged text messages with a man she identified as defendant on the day of the incident.[2] Fleming explained that she used to date defendant and his contacting her was "out of the blue," as they had not had any contact in over a year. During the conversation, defendant specifically asked about Honeycutt's whereabouts. Fleming indicated that Honeycutt was now living on Prest with her boyfriend. Thus, defendant's conversation with Brown established a motive for the crime, and defendant's conversation with Honeycutt established that he obtained Brown's address shortly after issuing threats to Brown.

Additionally, just two hours before the shooting, defendant texted codefendant Deshawn Kelso,[3] "Let's ride through the road, scoop some shit out. I got gas." This slang could be construed as an intention to remove, i.e., kill, someone. Plus, the evidence showed that, although defendant never had used his phone to call Brown before, defendant called Brown several times

---

[2] As already noted, the phone with the number that Fleming was exchanging texts with was found in defendant's pocket when he was arrested.

[3] Kelso was found not guilty by the jury.

starting within a minute of the shooting.  Defendant, however, used "*67" to conceal his phone number from Brown's caller ID.[4]

There was also evidence that connected defendant to the shooting through tracking his cellular phone's location.  United States Marshal John Jaehnig testified that when defendant first called Brown at 10:24 p.m. on May 7,[5] the cell phone towers indicated that defendant was located in the same area as the Prest address, where the shooting occurred.  Then, just two minutes after that, defendant made another phone call (this one was not to Brown), which placed him north of the Prest address.  At 10:27 p.m., defendant called Brown again using *67, and the towers showed that he was still moving in a northern direction.  Finally, defendant called Brown using *67 one last time at 10:41 p.m., which showed that defendant was in an area that covered his home on Ashton, which was located northwest from the Prest address.

Consequently, we conclude that when viewed in a light most favorable to the prosecution, the circumstantial evidence presented at trial was sufficient to identify defendant as one of the shooters.  Furthermore, to the extent that defendant also argues in his Standard 4 brief that the district court erred in binding over defendant on the charges, any error was harmless since there was sufficient evidence of defendant's identity presented at trial.  See *Bennett*, 290 Mich App at 481 (stating that an erroneous bindover decision is rendered harmless if the prosecution presents sufficient evidence at trial to convict a defendant).

## B.  EVIDENCE

In his statement of the questions presented, defendant next argues that the trial court "erred by allowing highly prejudicial hearsay & circumstantial evidence."  But looking at his brief, defendant seems to be focusing his argument on the fact that Marshal Jaehnig should not have been allowed to testify because the technology involved with logging phone calls and accompanying cell phone tower locations is not reliable.  However, any alleged reliability aspects would go the weight of the evidence, not its admissibility.  Thus, defendant's argument has no merit.  We also note that to the extent defendant's argument can be interpreted as raising hearsay issues related to the communications of Fleming and Brown, those argument are similarly without merit because both of their communications purportedly involved exchanges with defendant, and any statement by defendant is not hearsay, as he is a party opponent.  MRE 801(d)(2).

## C.  SENTENCING

Defendant next argues that the trial court erred when it considered a juvenile adjudication that was over 10 years old in scoring the prior record variables (PRVs) during defendant's sentencing.  Because defendant never raised this issue at sentencing, in a motion for

---

[4] There was testimony that using "*67" will conceal a caller's phone number from the recipient's caller ID, but it does not prevent the call from showing up in the caller's phone records.

[5] The shooting occurred at either 10:24 or 10:25 p.m.

resentencing, or in a motion to remand, the issue is not preserved. See *People v Loper*, 299 Mich App 451, 456; 830 NW2d 836 (2013). We review this unpreserved issue for plain error affecting defendant's substantial rights. *People v Stevens*, 306 Mich App 620, 623; 858 NW2d 98 (2014).

MCL 777.50(1) provides:

> In scoring prior record variables 1 to 5, do not use any conviction or juvenile adjudication that precedes a period of 10 or more years between the discharge date from a conviction or juvenile adjudication and the defendant's commission of the next offense resulting in a conviction or juvenile adjudication.

MCL 777.50(2) explains the method for determining the age of a conviction as follows:

> Apply subsection (1) by determining the time between the discharge date for the prior conviction or juvenile adjudication most recently preceding the commission date of the sentencing offense. If it is 10 or more years, do not use that prior conviction or juvenile adjudication and any earlier conviction or juvenile adjudication in scoring prior record variables. If it is less than 10 years, use that prior conviction or juvenile adjudication in scoring prior record variables and determine the time between the commission date of that prior conviction and the discharge date of the next earlier prior conviction or juvenile adjudication. If that period is 10 or more years, do not use that prior conviction or juvenile adjudication and any earlier conviction or juvenile adjudication in scoring prior record variables. If it is less than 10 years, use that prior conviction or juvenile adjudication in scoring prior record variables and repeat this determination for each remaining prior conviction or juvenile adjudication until a period of 10 or more years is found or no prior convictions or juvenile adjudications remain.

In *People v Billings*, 283 Mich App 538, 552; 770 NW2d 893 (2009), this Court explained that the proper method for determining whether a conviction or juvenile adjudication cannot be used for scoring PRVs is to examine "whether, starting with the present offense, there was ever a gap of 10 or more years between a discharge date and a subsequent commission date that would cut off the remainder of [the defendant's] prior convictions or juvenile adjudications."

The presentence investigation report (PSIR) lists two prior offenses. The PSIR provides that defendant was adjudicated guilty as a juvenile for resisting and obstructing a police officer stemming from an incident that occurred on September 5, 2001. The PSIR provides that defendant received probation for the offense on February 20, 2002, and the discharge date was March 9, 2004. The PSIR also provides that defendant was sentenced to two to four years' imprisonment in Pennsylvania for corrupt organizations, 18 Pa Cons Stat 911. The offense date was March 10, 2009, and the sentencing date was March 11, 2010. Defendant was discharged for the offense on January 31, 2013. The date of the offense that gave rise to this appeal was May 7, 2013.

There was never a gap of 10 or more years between any prior discharge date and May 7, 2013, which would cut off the remaining prior convictions or juvenile adjudications. See *Billings*, 283 Mich App at 552. Instead, there was a gap of less than one year between the

commission date of the current offense and the discharge date for defendant's corrupt organizations offense, and there was a gap of approximately five years between the date of the commission of the corrupt organizations offense and the discharge date for resisting and obstructing. Therefore, the trial court did not err in considering defendant's resisting and obstructing adjudication in scoring the PRVs.

## D. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant next argues in that defense counsel rendered ineffective assistance at several points during trial. Whether a defendant received ineffective assistance of trial counsel presents a mixed question of fact and constitutional law. *People v Douglas*, 496 Mich 557, 566; 852 NW2d 587 (2014). A trial court's factual findings are reviewed for clear error, while its constitutional determinations are reviewed de novo. *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). But because defendant never raised the issue in a motion for a new trial or an evidentiary hearing, the issue is not preserved, and our review is limited to mistakes apparent on the record. *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012).

"A criminal defendant has the fundamental right to effective assistance of counsel. However, it is the defendant's burden to prove that counsel did not provide effective assistance." *Id.* (citations omitted). "In order to obtain a new trial, a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). There is a strong presumption that defense counsel's conduct constituted sound trial strategy. *Id.* at 52.

First, defendant argues that defense counsel rendered ineffective assistance when she failed to present any defense witnesses, including defendant's alibi witnesses. However, a defendant must establish the factual predicate for his ineffective assistance of counsel claim. *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999). Defendant attaches several affidavits to his Standard 4 brief on appeal, in which several witnesses assert that they would have testified as alibi witnesses at trial. However, the affidavits do not appear in the trial court record, and there is no evidence in the trial court record regarding whether defendant even notified defense counsel of these witnesses. Therefore, defendant failed to establish the factual predicate of the claim, and he is not entitled to any relief.

Defendant next claims that defense counsel rendered ineffective assistance when she failed to file a motion to suppress the cellular phone calling records and the GPS maps that were created from the records. Defendant argues that the cellular phone records were unreliable because cellular phone calls may be missing from the records. Defendant also points out that the cellular phone may have belonged to someone else. However, defendant fails to provide factual support for his argument that the cellular phone records were unreliable. See *Hoag*, 460 Mich at 6. Furthermore, any objection would have been futile because any reliability concerns would have gone to the evidence's weight, not its admissibility.

In addition, defendant argues that trial counsel rendered ineffective assistance when she failed to order testing to prove that defendant never touched the bullet casings. Presumably, defendant is arguing that his fingerprints would not appear on the casings. However, defendant

-8-

fails to overcome the burden that defense counsel's conduct constituted sound trial strategy since it is possible that the result of the test would have been that defendant touched the bullet casings. See *Trakhtenberg*, 493 Mich at 52. Moreover, even if his fingerprints were not on the casings, it would not have altered the verdict, as him physically touching the casings was not necessary for the prosecution to prove that he was one of the shooters that night.

Defendant next argues that defense counsel should have raised the issue of the chain of custody of the downloaded cellular phone call records that were admitted into evidence at trial. However, defendant fails to explain his brief why he believes that there was an issue with the chain of custody of the cellular phone records, and there is no indication in the lower court record that there was a problem with the chain of custody. Thus, he failed to establish a factual predicate for his claim. See *Hoag*, 460 Mich at 6. Moreover, chain of custody goes to the weight of evidence, not its admissibility. *People v White*, 208 Mich App 126, 133; 527 NW2d 34 (1994).

Defendant also argues that defense counsel should have filed an interlocutory appeal to this Court with regard to the trial court's ruling "consolidating juries" in defendant's case and in codefendant Kelso's case. Defendant factual predicate is lacking, however. While the trial court consolidated the two trials, it maintained separate juries. Thus, the argument has no merit.

Defendant next claims that defense counsel should have attacked the voluntariness of Kelso's statement to the police. However, this issue is completely irrelevant, as defendant's jury was not present when Kelso's statement was presented in court to the Kelso jury. Accordingly, defendant cannot show how his case was affected, and his claim fails.

Defendant next argues that defense counsel rendered ineffective assistance when he failed to request a jury instruction regarding lesser included offenses. However, defendant abandons this issue since he fails to explain which lesser-included offense instruction defense counsel should have requested. See *People v Matuszak*, 263 Mich App 42, 59; 687 NW2d 342 (2004) ("An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment [of an issue] with little or no citation of supporting authority.") (citations and quotation marks omitted; alteration in original). Additionally, defendant fails to overcome the strong presumption that defense counsel's conduct in failing to request any lesser-included offense jury instruction constituted sound trial strategy since defense counsel may have decided to avoid the risk that defendant would be convicted of a lesser-included offense. See *People v Rone (On Second Remand)*, 109 Mich App 702, 718; 311 NW2d 835 (1981) (stating that attempting to force the jury into an "all or nothing" decision can be sound trial strategy).

Defendant also asserts that defense counsel should have filed a motion to compel the prosecution to produce Brown's cellular phone records. However, defendant fails to establish the factual predicate for his claim because there is no indication in the lower court record that the prosecution failed to supply defense counsel with the calling records or how these records would have been helpful to defendant. See *Hoag*, 460 Mich at 6.

Finally, defendant argues that defense counsel rendered ineffective assistance for agreeing with the trial court's scoring of the PRVs. However, as discussed above, the trial court

did not err in considering defendant's prior juvenile adjudication when it scored the PRVs. Therefore, an objection to the scoring of the PRVs would have been meritless. See *Ericksen*, 288 Mich App at 201.

Affirmed in part and remanded for further proceedings on the issue of court costs consistent with this opinion. We do not retain jurisdiction.

/s/ David H. Sawyer
/s/ Pat M. Donofrio
/s/ Stephen L. Borrello