**Michigan Supreme Court**
**Lansing, Michigan**

# Opinion

Chief Justice:          Justices:
Clifford W. Taylor      Michael F. Cavanagh
                        Elizabeth A. Weaver
                        Marilyn Kelly
                        Maura D. Corrigan
                        Robert P. Young, Jr.
                        Stephen J. Markman

FILED DECEMBER 17, 2008

In re Honorable WILLIAM C. HULTGREN
Judge, 19th District Court.                    No. 136880

BEFORE THE ENTIRE BENCH

CAVANAGH, J.

The Judicial Tenure Commission (JTC) recommended that this Court sanction respondent, 19th District Court Judge William C. Hultgren, with public censure and 60 days' suspension without pay for judicial misconduct. After considering respondent's actions, we conclude that they do not constitute judicial misconduct.

On July 10, 2007, the JTC filed Formal Complaint No. 82, alleging that respondent had committed judicial misconduct in violation of Const 1963, art 6, § 30; MCR 9.104 and MCR 9.205; and the Michigan Code of Judicial Conduct (MCJC), Canons 1, 2A, and 2C.[1]  This Court appointed the Honorable Norma

_____

[1] Const 1963, art 6, § 30, states in part:

(2) On recommendation of the judicial tenure commission, the supreme court may censure, suspend with or without salary, retire or remove a judge for . . . misconduct in office . . . or conduct that is clearly prejudicial to the administration of justice.

MCR 9.104 states in part:

(A) The following acts or omissions by an attorney, individually or in concert with another person, are misconduct and grounds for discipline, whether or not occurring in the course of an attorney-client relationship:

(1) conduct prejudicial to the proper administration of justice;

(2) conduct that exposes the legal profession or the courts to obloquy, contempt, censure, or reproach;

(3) conduct that is contrary to justice, ethics, honesty, or good morals;

(4) conduct that violates the standards or rules of professional responsibility adopted by the Supreme Court[.]

MCR 9.205 states in part:

(B) Grounds for Action. A judge is subject to censure, suspension with or without pay, retirement, or removal for . . . misconduct in office . . . or conduct that is clearly prejudicial to the administration of justice. . . .

(1) Misconduct in office includes, but is not limited to:

* * *

(e) misuse of judicial office for personal advantage or gain, or for the advantage or gain of another . . . .

* * *

(2) Conduct in violation of the Code of Judicial Conduct or the Rules of Professional Conduct may constitute a ground for action

2

Dotson-Sales as the master to hear the case. The master's report, issued on March

31, 2008, states the factual background:

> 1. Respondent is and has been a sitting 19th District Court Judge for approximately 15 years.
> 2. On October 13, 2006, a caller identified as Ali Beydoun, telephoned Respondent's office and requested a 15 minute appointment.
> 3. On October 16, 2006, Respondent held a meeting in his court chambers, for approximately 15 minutes, with Ali (a/k/a Wally) Beydoun and two (2) other men: Hussein Dabaja and Frank Dabaja (Hussein's cousin).

---

> with regard to a judge, whether the conduct occurred before or after the respondent became a judge or was related to judicial office.

Canon 1 of the Code of Judicial Conduct states in part:

> An independent and honorable judiciary is indispensable to justice in our society. A judge should participate in establishing, maintaining, and enforcing, and should personally observe, high standards of conduct so that the integrity and independence of the judiciary may be preserved. A judge should always be aware that the judicial system is for the benefit of the litigant and the public, not the judiciary. . . .

Canon 2 of the Code of Judicial Conduct states in part:

> A. Public confidence in the judiciary is eroded by irresponsible or improper conduct by judges. A judge must avoid all impropriety and appearance of impropriety. . . .
>
> * * *
>
> C. A judge should not allow family, social, or other relationships to influence judicial conduct or judgment. A judge should not use the prestige of office to advance personal business interests or those of others. . . .

3

4. Prior to October 16, 2006, Respondent had a casual relationship with Wally Beydoun and did not know the Dabaja cousins.

5. During the October 16th meeting, it became apparent that Hussein Dabaja ("Hussein") had difficulty with the English language and that Frank Dabaja ("Frank") apparently attended the meeting to act as a translator for his cousin.

6. Hussein, through Frank, claimed that he was a victim of mistaken identify [sic] regarding a credit card debt that occurred before his entry into the USA. He presented Respondent with documentation to support his claim. Said documentation included a passport and social security card.

7. Respondent requested his secretary, Miss Hunt, to search the court computer system (i.e., Court Case Register of Actions) for any cases involving Hussein Dabaja. The court screen displayed a case titled: *Asset Acceptance Corporation v Hussein Dabaja* ("*Asset Acceptance*") which was assigned to 19th District Judge Mark W. Somers and marked "Closed."

8. The Court Case Register of Actions also indicated that Plaintiff in the pending matter was represented by [attorney] Thomas D. Hocking.

9. Respondent telephoned Atty. Hocking's office, spoke with Ms. Danielle Groppi, Mr. Hocking's litigation secretary, and caused a letter and the documents presented to him by Hussein Dabaja to be faxed to Atty. Hocking. The letter was written on Respondent's official 19th District Court stationery.

10. Respondent had no further contact with the three men and no contact with the Asset Acceptance matter until he received two (2) memos, dated December 14, 2006 and January 2, 2007, from Judge Somers.

11. Respondent had no discussions with Judge Somers regarding the Hussein Dabaja matter until his receipt of the above two (2) memos from Judge Somers.

12. On January 3, 2007, Respondent sent a requested reply to Judge Somers.

13. Formal Complaint No. 82 was filed on July 10, 2007.

The master's report included the following findings of fact:

1. The relationship between the Respondent and Ali Beydoun, at best, was that of "acquaintances."

4

2. On October 16, 2006, there was no social, business or other relationship between the Respondent and Hussein Dabaja and Frank Dabaja.

3. Respondent'[s] October 16, 2006, meeting with his constituents was not misconduct.

4. Respondent used poor judgment when he failed to terminate the October 16th meeting once he discovered that the subject matter was assigned to another judge.

5. The October 16th meeting was not an ex parte communication violation.

6. Respondent's telephone call to Atty. Hocking's office was not misconduct.

7. Respondent's actions in writing the Oct. 16th letter were not that of an intervener. Rather, he acted as a conduit to prevent a miscarriage of justice.

8. Respondent's use of the words "a lawyer in a credit card collection mill" was not misconduct.

The master also made the following conclusions of law:

1. The charges contained in Formal Complaint No. 82 were not proven by a preponderance of the evidence.

2. Respondent's conduct in Formal Complaint No. 82 did not constitute [a] violation of the Michigan Constitution, 1963, as amended, Article 6, Section 30; MCR 9.104; MCR 9.205; or the Code of Judicial Conduct, Canons 1, 2A, 2C, or 3A.

After a public hearing, the JTC rejected the master's conclusions of law. It concluded that the facts established at the hearing demonstrated that respondent had committed judicial misconduct under all counts of the complaint. It recommended that respondent be sanctioned by public censure and 60 days' suspension without pay.[2]

---

[2] Two members of the nine-member JTC panel concurred with the majority's findings of fact and conclusions of law, but dissented from the recommended sanction. They believed that respondent should be sanctioned by public censure and a one-year suspension without pay.

MCR 9.225 states, in part, that this Court "shall review the record of the proceedings and file a written opinion and judgment, which may accept or reject the recommendations of the commission . . . ." Having reviewed the record in this case, we reject the recommendation of the JTC and adopt the findings of fact and conclusions of law of the master. In our judgment, respondent has not committed judicial misconduct. We also agree with the master, however, that respondent's actions under the circumstances reflected poor judgment. Respondent acknowledged this conclusion at the hearing before the master. Accordingly, we caution respondent to more carefully conform his actions to the rules and provisions that guide judicial conduct.

Michael F. Cavanagh
Elizabeth A. Weaver
Maura D. Corrigan
Stephen J. Markman

6

STATE OF MICHIGAN

SUPREME COURT


In re Honorable WILLIAM C. HULTGREN
Judge, 19th District Court.                    No. 136880

_____

YOUNG, J. (*concurring in part and dissenting in part*).

I concur with the majority that the respondent's actions in this case do not merit the 60-day suspension recommended by the Judicial Tenure Commission. Under the circumstances, the respondent's actions merit no more than an admonition. However, I disagree with and dissent from the majority's conclusion that respondent's actions did not constitute judicial misconduct. I believe that the respondent's actions constituted a clear violation of Canon 2C, as respondent *unquestionably* used the prestige of his office to advance the interests of Hussein Dabaja. Respondent contacted, both by telephone and in writing, the attorney executing a collection judgment against Hussein Dabaja, each time identifying himself as a judge of the 19th District Court.

The facts of this case are compelling, and it is easy to understand why a judge might choose to become involved to prevent what clearly appeared to be a case of mistaken identity and a miscarriage of justice. Hussein Dabaja, along with two other men, came to respondent's office seeking respondent's assistance. A default judgment had been entered against Dabaja, an immigrant who spoke very

little English, for a debt that plainly belonged to another man who shared the identical name.[1]

When respondent asked his secretary to locate the case, the computer entry indicated that a default judgment had been entered against Hussein Dabaja seven years earlier and that the case was currently closed. In his brief, respondent claims that because the computer indicated that the file was closed, respondent had "no indication that any post-judgment proceedings had been reinitiated against Hussein Dabaja."

However, I believe that the mere presence of three men appearing in his office seeking respondent's assistance for a "closed" file should have put respondent on notice that *some* type of postjudgment proceeding might have been in progress.[2] In fact, respondent's letter to Attorney Hocking, the attorney prosecuting the collection action against Hussein Dabaja, indicates respondent's

---

[1] The debt for medical equipment was incurred in 1986, two years before Hussein Dabaja immigrated to the United States. Moreover, Hussein Dabaja had a different social security number, different birthdate, and different maternal name than the debtor.

[2] Indeed, collection proceedings occurred contemporaneously with respondent's correspondence with attorney Thomas D. Hocking. In a 2008 hearing to set aside the 1999 default judgment, Judge Mark W. Somers indicated that an order of judgment was signed by the court in August 2006 against Hussein Dabaja and his business, H & G Marathon. Two separate requests and orders to seize property from Hussein Dabaja and his business were signed by the court at the end of September 2006. Hussein Dabaja filed objections to the garnishments on November 16, 2006, and those objections were denied by the court on December 8, 2006. Respondent's correspondence to Attorney Hocking was dated October 16, 2006.

2

*actual* awareness that collection efforts were underway. In his letter to the collection attorney, respondent stated that "[t]he Hussein A. Dabaja that *is being pursued for collection purposes* has a different mother than the Hussein A. Dabaja that actually incurred the debt." Thus, while the fact that respondent inquired into the status of the case and it was listed as "closed" in the court's computer records is a mitigating factor, that factor is undercut by the circumstances of the case, as well as respondent's letter.

The second sentence of Canon 2C is quite clear, and contains no exceptions or exclusions: "A judge should not use the prestige of office to advance personal business interests or those of others." Respondent intervened twice on behalf of Hussein Dabaja, both times in his capacity as a judge. I conclude that respondent's actions constituted judicial misconduct under the plain language of the canon. That respondent was acting to prevent a miscarriage of justice is a mitigating factor to be considered when formulating the appropriate *sanction*, but it simply does not excuse respondent's frank noncompliance with the Michigan Code of Judicial Conduct.

While few judges would be unmoved by the miscarriage of justice revealed to respondent, Canon 2C was drafted with an understanding of the coercion inherent in the advocacy of a judge intervening *as a judge* on behalf of another. It is for this reason that the canon states that a judge "should not use the prestige of office to advance personal business interests or those of others." The majority gives no meaning to this injunction, and, in so doing, eliminates the bright line of

3

ethical behavior set forth in Canon 2C. As I believe the canon states a sensible restriction on "judicial advocacy"—a term that is oxymoronic—the canon should be consistently enforced for the protection of the public and as a reminder to judges that they cannot be advocates for the personal business interests of others, even for worthy causes.

Under the majority's formulation, which concludes that no judicial misconduct occurred, a sufficiently compelling reason for using the prestige of judicial office to advance the business interests of others apparently amounts to no violation at all. Because the majority concludes that respondent's actions did not constitute judicial misconduct, I dissent. I concur, however, with the majority's rejection of the 60-day suspension recommended by the Judicial Tenure Commission. I believe that an admonition is an adequate sanction under the facts of this case.

Robert P. Young, Jr.
Clifford W. Taylor
Marilyn Kelly

4