**Michigan Supreme Court**
**Lansing, Michigan**

# Opinion

Chief Justice:        Justices:
Clifford W. Taylor    Michael F. Cavanagh
                      Elizabeth A. Weaver
                      Marilyn Kelly
                      Maura D. Corrigan
                      Robert P. Young, Jr.
                      Stephen J. Markman

FILED DECEMBER 19, 2008

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v                                              No. 135666

ERIC TAYLOR,

Defendant-Appellant.

---

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v                                              No. 135683

ROBERT LEE KING,

Defendant-Appellant.

---

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v                                              No. 135692

MARLON SCARBER,

Defendant-Appellant.

---

BEFORE THE ENTIRE BENCH

PER CURIAM.

In this case, two juries convicted three defendants of multiple crimes related to the kidnapping and murder of Fate Washington. Defendant Robert L. King argues that the inculpatory statements of codefendant Marlon Scarber, admitted through the testimony of an acquaintance, violated the rules of evidence and King's right of confrontation under *People v Poole*, 444 Mich 151; 506 NW2d 505 (1993). In lieu of granting leave to appeal, we hold that, insofar as *Poole* held that the admissibility of a codefendant's nontestimonial hearsay statement is governed by *both* MRE 804(b)(3) and the Confrontation Clause of the United States Constitution, it is no longer good law. We nevertheless affirm the decision of the Court of Appeals because we conclude that the Court sufficiently addressed the issue of the statements' admissibility under MRE 804(b)(3). We deny defendants' applications for leave to appeal in all other respects.

## I. FACTS AND PROCEDURAL HISTORY

The Court of Appeals summarized the facts of this case as follows:

> The victim, Fate Washington, was sitting in the driver's-side seat of his Ford Expedition on the street outside his house. He had just finished speaking with a neighbor when defendant Scarber and an unidentified man, both clad in black, approached the vehicle and forced Washington, at gunpoint, further into the vehicle. Both the neighbor and Washington's adult son, who was near a window inside the house, witnessed the scene. Washington scuffled with the men long enough that the neighbor was able to run home, retrieve a handgun, and open fire on the vehicle from his front porch. The eyewitnesses verified that Scarber climbed into the driver's seat while a second vehicle[,] driven by defendant King, rolled up and

2

opened fire on the neighbor with an automatic rifle. Other witnesses confirmed that the tandem of vehicles sped off through the streets after the shots were fired. Soon afterward, defendant King forced Washington to make a series of calls demanding ransom in return for his life.

A former friend of Scarber's and associate of [Taylor and King], Troy Ervin, provided a detailed account of events after Washington was taken captive. The group took Washington to a house owned by Ervin's sister, and defendant King persuaded Ervin to trade cars with him for a while. When Ervin visited the house, he was initially denied access into the home. Scarber later called him and told him that he and the other defendants had kidnapped Washington and held him at the house. Scarber explained that Taylor had helped and that King had shot at the man's defenders. Scarber also admitted that he almost blew himself up burning the man's vehicle. This information was confirmed at trial by a witness who heard a large explosion that night and saw a vehicle, later identified as Washington's Expedition, on fire outside her home. Ervin visited the house again and found Washington lying on the floor of a back room wearing nothing but a sheet. Taylor guarded the man with an automatic rifle like the one described by witnesses to Washington's capture, and King was armed with a handgun like the one Scarber had used. While Ervin was there, he heard Taylor deny Washington's request to use the phone again to make more ransom calls.

Ervin left, but returned again later after Scarber called and told him that King had shot Washington in the legs and he had bled to death. Ervin was agitated at finding that Washington was killed in his sister's house, because it associated him with the murder. He saw the dead body in the back room, and then he went to the hardware store for King and purchased tools for burying the body. After he dropped off the tools, he was again called and informed that the group had buried the body in the back yard of the property. Ervin was again agitated at the use of his sister's property, but Taylor assured him that the burial site was inconspicuously concealed by the doghouse and the body was secure under a layer of concrete. Searchers later found the body buried as Ervin described it. The body was found with two gunshot wounds, one through each leg.

3

Upon hearing that Ervin, who was not charged with a crime, had made a statement to police about Washington's murder, defendant Scarber also decided to make a statement. Except for Scarber's self-serving insistence that he participated in the crimes under duress and tried to care for Washington by bandaging his first gunshot wound and bringing him water, Scarber's statement to police was remarkably consistent with Ervin's. Scarber's statement confirmed the details of a successful ransom recovery that involved a peculiar delivery method, a particular mailbox, and a relatively small amount of money and drugs. Scarber's statement described defendant King as Washington's killer, and explained that, before he shot Washington a second time, King expressed a frustrated lack of concern with Washington's life and an unabashed willingness to kill him. Because the prosecutor wanted to place defendant Scarber's statement into evidence, Scarber received a separate jury for the purpose, isolating defendant King's and defendant Taylor's jury from Scarber's blame-shifting account of Washington's captivity. [*People v Taylor*, unpublished opinion per curiam of the Court of Appeals, issued November 29, 2007 (Docket Nos. 273443, 273543, and 273955), at 2-3.]

A jury convicted King and Taylor of second-degree murder,[1] MCL 750.317; first-degree felony murder, MCL 750.316(1)(b); kidnapping, MCL 750.349; and possession of a firearm during the commission of a felony, MCL 750.227b. It also convicted King of armed robbery, MCL 750.529, but acquitted Taylor of armed robbery. The trial court sentenced King to life imprisonment for the first-degree felony murder conviction, 25 to 80 years for the second-degree murder, armed robbery, and kidnapping convictions, and two years for the felony-firearm conviction. It sentenced Taylor to life imprisonment for the first-degree

---

[1] Both were charged with first-degree premeditated murder, but the jury convicted them of the lesser offense of second-degree murder.

murder conviction, 25 to 80 years for the kidnapping conviction, and two years for the felony-firearm conviction.[2]

A separate jury convicted defendant Scarber of first-degree premeditated murder, MCL 750.316(1)(a); felony murder; armed robbery; kidnapping; felony-firearm; and felon in possession of a firearm, MCL 750.224f. The trial court sentenced him to life imprisonment for the premeditated murder conviction, 38 to 80 years for the armed robbery and kidnapping convictions, and two years for the felony-firearm conviction.[3]

After consolidating defendants' appeals, the Court of Appeals affirmed Scarber's convictions and sentences, but set aside King's second-degree murder and kidnapping convictions and Taylor's kidnapping conviction on double jeopardy grounds.[4] All three defendants sought leave to appeal in this Court.

---

[2] The trial court vacated Taylor's second-degree murder conviction on double jeopardy grounds.

[3] The trial court vacated Scarber's felony-murder conviction on double jeopardy grounds and dismissed his felon in possession conviction without explanation.

[4] The Court reasoned that King could not be convicted of both first-degree and second-degree murder of the same person. With respect to King's kidnapping conviction, the Court ruled that either the kidnapping conviction or the armed robbery conviction was the predicate felony for the felony-murder conviction, so setting aside the kidnapping conviction meant that King would only receive one punishment for the kidnapping conviction (his sentence for felony murder), and then could be separately punished for armed robbery. The Court set aside Taylor's kidnapping conviction using the same reasoning (the only difference is that Taylor was acquitted of armed robbery). *Taylor*, *supra* at 3-5. We note that because the Court of Appeals issued its opinion in this case before we issued our opinion in *People v Ream*, 481 Mich 223, 225; 750 NW2d 536 (2008) (holding that

## II. ANALYSIS

Defendant King challenges the trial court's admission, through Ervin's testimony,[5] of defendant Scarber's statements to Ervin that (1) Scarber, King, and Taylor had kidnapped Washington and were holding him at the house owned by Ervin's sister and that (2) King had shot Washington once in each leg, causing him to bleed to death. King argues before this Court, as he did before the Court of Appeals, that Scarber's statements to Ervin were inadmissible hearsay and that the trial court erred in failing to consider their reliability before holding that the statements would not violate the Confrontation Clause. The Court of Appeals held that the rules of evidence did not preclude admission of the statements because they fell within the hearsay exception for statements against the declarant's penal interest, MRE 804(b)(3). *Taylor*, *supra* at 5. It also held that the trial court's failure to analyze the reliability of the statements was harmless because the statements bore sufficient indicia of reliability under the factors articulated in *Poole*, *supra* at 165, and they therefore did not violate King's right of confrontation. *Taylor*, *supra* at 5-6.

We hold that the portion of *Poole* pertaining to the requirements of the Confrontation Clause is no longer good law because it was premised on *Ohio v*

---

"convicting and sentencing a defendant for both felony murder and the predicate felony does not necessarily violate the 'multiple punishments' strand of the Double Jeopardy Clause"), the Court did not have the benefit of our holding in *Ream* when it decided this case.

[5] As a codefendant, Scarber was not available to testify at trial.

*Roberts*, 448 US 56; 100 S Ct 2531; 65 L Ed 2d 597 (1980), which has been overruled by *Crawford v Washington*, 541 US 36; 124 S Ct 1354; 158 L Ed 2d 177 (2004), and *Davis v Washington*, 547 US 813; 126 S Ct 2266; 165 L Ed 2d 224 (2006). Because the hearsay statements in this case were nontestimonial, they do not implicate the Confrontation Clause, *Davis*, *supra* at 821, and their admissibility is governed solely by MRE 804(b)(3). We nevertheless affirm the decision of the Court of Appeals on the basis of the Court's determination that the statements were admissible under MRE 804(b)(3).

The Confrontation Clause provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." US Const, Am VI. This Court's Confrontation Clause analysis in *Poole* was predicated on the Confrontation Clause analysis articulated by the United States Supreme Court in *Roberts*. In *Roberts*, the Court considered the relationship between the Confrontation Clause and the hearsay rule. It held that the Confrontation Clause limits the scope of admissible hearsay in two ways: first, it generally requires the prosecution to either produce the declarant or demonstrate that he is unavailable; second, it requires that the statement bear certain "indicia of reliability." *Id*. at 65-66. The Court further held that "[r]eliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception." *Id*. at 66. Otherwise, the evidence is inadmissible "absent a showing of particularized guarantees of trustworthiness." *Id*.

7

In *Poole*, this Court considered the admissibility of a declarant's voluntary, out-of-court statement made to someone other than a police officer, implicating the declarant and the defendant in criminal activity. *Id*. at 153-154. It held that in order for such a statement to be admissible as substantive evidence against the defendants at trial, it must be admissible under both MRE 804(b)(3) and the Confrontation Clause. *Id*. at 157. After concluding that the statement was admissible under MRE 804(b)(3), the Court considered whether admission of the statement at issue violated the defendants' right of confrontation. *Id*. at 162. Following a discussion of *Roberts* and *Idaho v Wright*, 497 US 805, 819, 822-823; 110 S Ct 3139; 111 L Ed 2d 638 (1990) (applying *Roberts*), this Court set forth guidelines for analyzing the reliability of a declarant's out-of-court statement:

> In evaluating whether a statement against penal interest that inculpates a person in addition to the declarant bears sufficient indicia of reliability to allow it to be admitted as substantive evidence against the other person, courts must evaluate the circumstances surrounding the making of the statement as well as its content.
>
> The presence of the following factors would favor admission of such a statement: whether the statement was (1) voluntarily given, (2) made contemporaneously with the events referenced, (3) made to family, friends, colleagues, or confederates—that is, to someone to whom the declarant would likely speak the truth, and (4) uttered spontaneously at the initiation of the declarant and without prompting or inquiry by the listener.
>
> On the other hand, the presence of the following factors would favor a finding of inadmissibility: whether the statement (1) was made to law enforcement officers or at the prompting or inquiry of the listener, (2) minimizes the role or responsibility of the declarant or shifts blame to the accomplice, (3) was made to avenge

8

the declarant or to curry favor, and (4) whether the declarant had a motive to lie or distort the truth. [*Poole*, *supra* at 165.]

Applying these factors, the *Poole* Court concluded that the witness did not prompt the declarant to make the statement or inquire about events referenced in the statement. The statement did not minimize the declarant's role in the attempted robbery or his responsibility for the murder, and was not made in order to shift blame to the defendants, avenge the declarant, or curry favor. Nor was there any indication that the declarant had a motive to lie. On that basis, the Court concluded that the statement and the circumstances under which it was made bore sufficient indicia of reliability to satisfy the requirements of the Confrontation Clause. *Id*. at 165-166.

The United States Supreme Court subsequently decided *Crawford* and *Davis*, which in combination overruled *Roberts* in its entirety. In *Crawford*, the Court overruled the *Roberts* "indicia of reliability" analysis where testimonial statements are concerned. It held that, "[w]here testimonial evidence is at issue," "the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination." *Crawford*, *supra* at 68. The Court declined to "spell out a comprehensive definition of 'testimonial,'" but stated that "[w]hatever else the term covers, it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations." *Id*.

In *Davis*, the United States Supreme Court revisited the question of the application and requirements of the Confrontation Clause. It held that the clause only restricts the admissibility of testimonial statements because "[o]nly statements of this sort cause the declarant to be a 'witness' within the meaning of the Confrontation Clause." *Id*. at 821. While nontestimonial statements are subject to traditional rules limiting the admissibility of hearsay, they do not implicate the Confrontation Clause. *Id*. The Court considered the circumstances under which statements made during a police investigation were testimonial. It concluded that such "[s]tatements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency." *Id*. at 822. "They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." *Id*.

The overruling of *Roberts* by the United States Supreme Court in *Crawford* and *Davis* undermines the analytical underpinnings of this Court's decision in *Poole*, which was entirely predicated on *Roberts*. Thus, the holding in *Poole* that a codefendant's nontestimonial statement is governed by *both* MRE 804(b)(3) and the Confrontation Clause is no longer good law. Scarber's statements to Ervin were nontestimonial because they were made informally to an acquaintance, not during a police interrogation or other formal proceeding, see *Crawford*, *supra* at

10

68, or under circumstances indicating that their "primary purpose" was to "establish or prove past events potentially relevant to later criminal prosecution," *Davis*, *supra* at 822. Accordingly, the admissibility of the statements in this case is governed solely by MRE 804(b)(3). This Court's MRE 804(b)(3) analysis in *Poole* remains valid, however, and provides the applicable standard for determining the admissibility of a codefendant's statement under the hearsay exception for statements against a declarant's penal interest. MRE 804(b)(3) provides:

> (b) Hearsay exceptions. The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

> * * *

> (3) *Statement against interest.* A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability, or to render invalid a claim by the declarant against another, that a reasonable person in the declarant's position would not have made the statement unless believing it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.

In *Poole*, this Court held:

> [W]here, as here, the declarant's inculpation of an accomplice is made in the context of a narrative of events, at the declarant's initiative without any prompting or inquiry, that as a whole is clearly against the declarant's penal interest and as such is reliable, the whole statement—including portions that inculpate another—is

11

admissible as substantive evidence at trial pursuant to MRE 804(b)(3). [*Poole*, *supra* at 161.][6]

In this case, Scarber made his first statement, implicating himself, King, and Taylor in the kidnapping, during a telephone conversation with Ervin on the day of the kidnapping. During another call to Ervin the following day, apparently shortly after Washington died, Scarber made the second statement implicating King alone in the shooting of Washington. Scarber did not make any self-inculpatory statements during this call. The Court of Appeals concluded that both statements fell within the hearsay exception for statements against penal interest, stating that "because the statements at issue were provided in a narrative, both those portions that inculpated Scarber alone and those that inculpated his

---

[6] *Poole*, *supra* at 161-162, explicitly relied on the commentary to FRE 804(b)(3), on which MRE 804(b)(3) is modeled. In *Williamson v United States*, 512 US 594, 600-601; 114 S Ct 2431; 129 L Ed 2d 476 (1994), the United States Supreme Court held that the federal rule "does not allow admission of non-self-inculpatory statements, even if they are made within a broader narrative that is generally self-inculpatory." We note this development in federal law, but believe that the portion of *Poole* pertaining to MRE 804(b)(3) was correctly decided. See *People v VanderVliet*, 444 Mich 52, 60 n 7; 508 NW2d 114 (1993), amended on other grounds 445 Mich 1205 (1994) (noting that this Court finds commentary and caselaw on the federal rules of evidence helpful and, in some cases, persuasive). See also *People v Beasley*, 239 Mich App 548, 556; 609 NW2d 581 (2000). In *Poole*, we also suggested that "carry over" portions of a declarant's statement—those that inculpate the defendant but are not directly against the declarant's interest—might be admissible under a "catch-all" hearsay exception, which Michigan did not have at the time. *Poole*, *supra* at 159 n 11. Although the Michigan Rules of Evidence now contain such an exception, MRE 803(4), we do not address whether the statements at issue

codefendants were admissible." *Taylor*, *supra* at 5. Moreover, in discussing the admissibility of the second statement under the Confrontation Clause, the Court acknowledged that "it is arguable that defendant Scarber's desire to disassociate himself from the murder provided him with a motive to lie about the identity of the individual (perhaps Scarber himself) who actually shot Washington." *Id*. at 6. The Court concluded, however, that the second statement was part of "a pattern of impugning communications" volunteered spontaneously and without reservation to a friend, not delivered to police, and "without any apparent secondary motivation other than the desire to maintain the benefits of the relationship's confidence and trust—and according to the record, to brag." *Id*. Accordingly, the Court concluded that "Scarber's statements to Ervin constituted a 'narrative of events,' so the statements were admissible at trial in their entirety." *Id*. Given these determinations, we are satisfied that the Court of Appeals sufficiently considered the issue of the statements' admissibility under MRE 804(b)(3) and *Poole*, *supra* at 161, and affirm on that basis.

---

here are admissible under that exception because we conclude that they are admissible under MRE 804(b)(3).

In all other respects, defendants' applications for leave to appeal are denied, because we are not persuaded that the questions presented should be reviewed by this Court.

Clifford W. Taylor
Elizabeth A. Weaver
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman

S T A T E   O F   M I C H I G A N

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v                                       No. 135666

ERIC TAYLOR,

      Defendant-Appellant.

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v                                       No. 135683

ROBERT LEE KING,

      Defendant-Appellant.

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v                                       No. 135692

MARLON SCARBER,

      Defendant-Appellant.

CAVANAGH, J. (*concurring in part and dissenting in part*).

I concur that *People v Poole*, 444 Mich 151; 506 NW2d 505 (1993), is no longer controlling law to the extent it relied on *Ohio v Roberts*, 448 US 56; 100 S

Ct 2531; 65 L Ed 2d 597 (1980), to hold that the admissibility of a codefendant's nontestimonial hearsay statement is governed by the Confrontation Clause of the Sixth Amendment of the United States Constitution. I dissent, however, because I would grant leave to appeal to consider the viability of *Poole*'s interpretation of MRE 804(b)(3) in light of *Williamson v United States*, 512 US 594, 600-601; 114 S Ct 2431; 129 L Ed 2d 476 (1994).

Under MRE 804(b)(3), a nontestimonial hearsay statement is not excluded if the declarant is not available as a witness and the statement "so far tended to subject the declarant to civil or criminal liability . . . that a reasonable person in the declarant's position would not have made the statement unless believing it to be true." *Poole* interpreted MRE 804(b)(3) to allow a declarant's statements to be admitted as a whole against a codefendant, even where some of the statements inculpate the codefendant without inculpating the declarant, if made "in the context of a narrative of events" that as a whole was against the declarant's penal interest. *Poole, supra* at 161. The *Poole* Court stated that it was "guided by the comment of the Advisory Committee for the Federal Rules of Evidence concerning FRE 804(b)(3), on which the Michigan rule is modeled." *Id.*

As the majority opinion acknowledged in this case, one year after *Poole* was decided, the United States Supreme Court repudiated the interpretation of the federal commentary advanced in *Poole*. See *Williamson, supra* at 600-601. Specifically, *Williamson* held that "the most faithful reading of Rule 804(b)(3) is that it does not allow admission of non-self-inculpatory statements, even if they

are made within a broader narrative that is generally self-inculpatory. . . . [T]his is especially true when the statement implicates someone else." *Williamson, supra* at 600-601. *Williamson* further stated that the Court did not need to look to the federal commentary to interpret FRE 804(b)(3) because "the policy expressed in [the rule]'s text points clearly enough in one direction that it outweighs whatever force the Notes may have." *Id.* at 602. Nevertheless, the Court considered the portion of the federal commentary on which *Poole* relied, and found it "not particularly clear" and inconsistent with other portions of the commentary, which the Court found to support a contrary interpretation. *Id.*

This Court should grant leave to appeal to reconsider the validity of *Poole* in light of *Williamson*. The majority opinion dismisses *Williamson* in a footnote by tersely stating that "[w]e note this development in federal law, but believe that the portion of *Poole* pertaining to MRE 804(b)(3) was correctly decided." *Ante* at 12 n 6. While the United States Supreme Court's interpretation of FRE 804(b)(3) does not necessarily control how this Court interprets MRE 804(b)(3), I cannot agree that *Poole* is so clearly and completely unaffected by *Williamson* that it is appropriate for this Court to dismiss the issue in a footnote.

The United States Supreme Court's express rejection of the interpretation of the federal commentary on which *Poole* relies is significant. The majority misses the point when it notes that this Court is not bound by the FRE by stating that "this Court finds commentary and caselaw on the [FRE] helpful and, in some cases, persuasive." *Ante* at 12 n 6, citing *People v VanderVliet*, 444 Mich 52, 60 n

3

7; 508 NW2d 114 (1993). When this Court bases its interpretation of an MRE on the federal commentary to the equivalent FRE, and the United States Supreme Court then soundly rejects that understanding of the FRE, it merits greater attention from this Court than dismissal in a footnote. It is true that we are not bound by the FRE because we find commentary and caselaw for the FRE "only" helpful and sometimes persuasive. But, because we do find commentary and caselaw for the FRE helpful and sometimes persuasive, it is worth evaluating in a meaningful, substantive manner whether *Poole*'s interpretation of MRE 804(b)(3) was correct irrespective of *Williamson*'s rejection of *Poole*'s reasoning.[1] This jurisprudentially significant issue merits, at a minimum, granting leave to appeal.

Further, as stated in my dissent in *Poole*, I continue to think that it is more consistent with the text of MRE 804(b)(3) to exclude the portions of a declarant's statements that implicate a codefendant but are not against the declarant's penal interest. See *Poole, supra* at 166-169 (Cavanagh, J., dissenting). The exception to the general rule against hearsay in MRE 804(b)(3) allows admission of statements against interest only insofar as a "reasonable person in the declarant's position would not have made the statement unless believing it to be true." As stated in *Williamson, supra* at 599-600:

> Rule 804(b)(3) is founded on the commonsense notion that reasonable people, even reasonable people who are not especially

---

[1] In lieu of conducting a meaningful, substantive evaluation of the validity of *Poole* after *Williamson*, the majority opinion "notes" *Williamson* and affirms *Poole* without analysis and seemingly without genuine consideration.

4

honest, tend not to make self-inculpatory statements unless they believe them to be true. . . . The fact that a person is making a broadly self-inculpatory confession does not make more credible the confession's non-self-inculpatory parts. One of the most effective ways to lie is to mix falsehood with truth, especially truth that seems particularly persuasive because of its self-inculpatory nature.

*Poole*'s interpretation of MRE 804(b)(3) is an imprecise proxy for when a "reasonable person in the declarant's position would not have made the statement unless believing it to be true." MRE 804(b)(3). *Poole* incorrectly assumed that any statement made in the context of a narrative of events that as a whole is against the declarant's penal interest is one that a reasonable person in the declarant's position would not have made unless it were true. *Williamson*'s interpretation more accurately reflects the rule's text and the reality that the underlying justification for inferring that self-inculpatory statements are true does not necessarily extend to contemporaneous non-self-inculpatory statements. This is especially true when, as in this case, the non-self-inculpatory statements exculpate the declarant and inculpate a codefendant.[2]

This Court should grant leave to appeal to reconsider *Poole* in light of *Williamson* because *Williamson* rejected the interpretation of the federal

---

[2] To the extent that Scarber's statements in the first phone call implicated both himself and his codefendants, a court could infer that a reasonable person would not have made the statements unless they were true. In contrast, Scarber's statements in the second telephone call implicated only King. It would be in Scarber's interest to exculpate himself from the shooting by inculpating only King in the second call; therefore, a "reasonable person" might have made those statements even if they were not true. This demonstrates why *Williamson*'s

5

commentary on which *Poole* was based. Further, the facts of this case illustrate the flaws in *Poole*'s interpretation of MRE 804(b)(3) as compared to *Williamson*'s interpretation.

Michael F. Cavanagh
Marilyn Kelly

---

application of MRE 804(b)(3) reaches a result more precisely connected to the rule's text than *Poole*'s interpretation does.