*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

TEWAN ROLAX,

        Defendant-Appellant.

UNPUBLISHED
February 11, 2025
12:01 PM

No. 366843
Oakland Circuit Court
LC No. 2022-282307-FC

Before: BOONSTRA, P.J., and M. J. KELLY and MALDONADO, JJ.

PER CURIAM.

Defendant appeals by right from his jury trial convictions of assault with intent to murder (AWIM), MCL 750.83, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. Defendant was sentenced to serve consecutive terms 30 to 60 years' imprisonment for AWIM and 2 years' imprisonment for felony-firearm. We affirm.

## I. BACKGROUND

This case arises from the nonfatal shooting of Earvin Coakley. The victim's father was a "taxi driver" who had given defendant a ride recently before the shooting. While at the grocery store with the victim, he received a phone call from a neighbor informing him that someone was looking through the window of his house. The victim and his father returned to the house, and defendant was on the porch. The victim testified that he had never seen defendant before in his life. Defendant reported that he had forgotten his phone, so the victim located and gave defendant his phone back then walked away. Defendant proceeded to shoot the victim four times; there is nothing in the record regarding the motive behind the shooting. At trial, the victim identified defendant as the shooter. Defendant then got into a minivan which sped away. Officer David Taylor saw the van, and the victim's father pointed to the van and said, "He just shot my son." Officer Taylor did his best to follow the van, which was "driving pretty fast and erratically," but he waited for backup to arrive before pulling it over. When the van was pulled over, the police found defendant, another man, two women, a baby, and two other children. After removing the men, women, and baby, one of the two remaining children "blurted out" that "Tewan shot a gun." Meanwhile, at the scene of the shooting, police found four shell casings that were compatible with

a 380-caliber pistol. Shortly thereafter, police found a 380-caliber pistol in a nearby yard, and a six-round magazine was found in the driveway. It appeared to the responding Detective that the gun had been thrown and that the magazine ejected when the gun hit the pavement. Subsequent testing revealed that defendant's DNA was present on both the gun and the magazine. Defendant was found guilty as described earlier, and this appeal followed.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant argues that he is entitled to a new trial due to the ineffective assistance of counsel. We disagree.

Claims of ineffective assistance of counsel present mixed questions of fact and law. *People v Head*, 323 Mich App 526, 539; 917 NW2d 752 (2018). Factual findings are reviewed for clear error, and legal conclusions are reviewed de novo. *Id*. "To prevail on a claim of ineffective assistance, a defendant must, at a minimum, show that (1) counsel's performance was below an objective standard of reasonableness and (2) a reasonable probability exists that the outcome of the proceeding would have been different but for trial counsel's errors." *Head*, 323 Mich App at 539 (quotation marks, citation, and alteration omitted). "[A] reasonable probability is a probability sufficient to undermine confidence in the outcome." *People v Randolph*, 502 Mich 1, 9; 917 NW2d 249 (2018).

## A. CONFRONTATION CLAUSE

Defendant argues that defense counsel rendered ineffective assistance by failing to object to admission of the child's statement that defendant was the shooter because this testimony violated his confrontation right. Because the evidence was not objectionable, this argument is without merit.

The United States Constitution provides, "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ." US Const, Am VI. Similarly, the Michigan Constitution provides, "In every criminal prosecution, the accused shall have the right . . . to be confronted with the witnesses against him or her . . . ." Const 1963, art 1, § 20. "The Confrontation Clause prohibits the admission of out-of-court statements that are testimonial in nature, unless the declarant was unavailable at trial and the defendant had a prior opportunity to cross-examine the declarant." *People v Putnam*, 309 Mich App 240, 246; 870 NW2d 593 (2015). A statement is testimonial and therefore subject to the Confrontation Clause if the statement was made "during a police interrogation or other formal proceeding or under circumstances indicating that their primary purpose was to establish or prove past events potentially relevant to later criminal prosecution." *People v Taylor*, 482 Mich 368, 378; 759 NW2d 361 (2008) (quotation marks and citations omitted).

Defendant argues that his confrontation right was violated when the court admitted the child's statement that defendant shot Coakley. However, Ace's statement was not the product of any sort of questioning by the officer rather, it was "blurted out" when the officer was asking the

children "how their day was" and helping them put on their jackets.[1]  Nevertheless, defendant argues that the child's statement to this officer was the product of a previous statement made to Officer Matthew Theisen.  Defendant cites the following excerpt from the police report:

> Ofcs on scene were conducting their investigation as I approached the vehicle and observed 3 small children in the rear seat of the vehicle.  I asked the kids if they knew what happened before the police stopped their car.  [A child] immediately said that "Tewan shot the man!"  I asked [the child] which person Tewan was.  [The child] stated that Tewan was wearing a shirt that had the same logo on it that was on [the child]'s hat.  I observed that Tewan's black t-shirt had the identical logo on it that [the child]'s shirt had.

Defendant argues that the child's statement to the second officer Arbenewske was testimonial because he "simply repeated those [statements] he made to Officer Theisen."

The only authority defendant cites in support of this argument is *Hammon v Indiana*, which is the companion case to the Supreme Court's decision in *Davis v Washington*, 547 US 813; 126 S Ct 2266; 165 L Ed 2d 224 (2006).  In that case, the police responded to a domestic disturbance at the home of Hershel and Amy Hammon; Hershel reported that the pair had been in an argument but that everything had calmed down.  *Id*. at 819.

> One of the officers remained with Hershel; the other went to the living room to talk with Amy, and again asked her what had occurred.  Hershel made several attempts to participate in Amy's conversation with the police but was rebuffed. . . .  After hearing Amy's account, the officer had her fill out and sign a battery affidavit.  Amy handwrote the following: "Broke our Furnace & shoved me down on the floor into the broken glass.  Hit me in the chest and threw me down.  Broke our lamps & phone.  Tore up my van where I couldn't leave the house.  Attacked my daughter."  [*Id*. at 819-820 (quotation marks, citations, and alterations omitted).]

Because the police were questioning Amy about "possibly criminal past conduct" and because "[t]here was no emergency in progress," the United States Supreme Court concluded that the statements were testimonial.  *Id*. at 829-830.

It is unclear how any parallels can be drawn between *Hammon* and the present case because the factual circumstances are completely different.  There is no indication in *Hammon* that an otherwise nontestimonial, spontaneous statement was made after a testimonial statement.  Simply put, the case lends no support to defendant's argument that a spontaneous description of a crime, not made in response to a question, becomes testimonial if the same information was given earlier in response to questions from a different police officer.  Defendant draws two connections between this case and *Hammon*: the child's statements to Officer Theisen were not made in response to an ongoing emergency and also were about past events.  While this supports a conclusion that the

---

[1] This statement was then admitted at trial as an excited utterance pursuant to MRE 803(2).

statement made in response to Officer Theisen's questions was testimonial, it lends no support to a conclusion that the spontaneous statement made to the second officer was testimonial.

For these reasons, admission of Ace's statement to Officer Arbenowske did not run afoul of defendant's confrontation rights. Therefore, any objection would have been futile, and defense counsel is not ineffective for declining to raise a futile objection. See *People v Goodin*, 257 Mich App 425, 433; 668 NW2d 392 (2003).

## B. JURY INSTRUCTIONS

Defense counsel erred by failing to ensure that the jury was instructed that it could not draw adverse inferences from defendant's decision not to testify, but reversal is not warranted because defendant cannot establish that this error affected the outcome of the trial.

"A criminal defendant has the right to have a properly instructed jury consider the evidence against him." *People v Rodriguez*, 463 Mich 466, 472; 620 NW2d 13 (2000) (quotation marks and citation omitted). At the conclusion of a trial, the court is required to "instruct the jury as required and appropriate . . ." MCR 2.513(N)(1). The Michigan Court rules require the reading of Michigan's Model Jury instructions if the instructions "are applicable," the instructions "accurately state the applicable law, and" the instructions "are requested by a party." MCR 2.512(D)(2). However, even flawed instructions "do not create error if they fairly present to the jury the issues tried and sufficiently protect the defendant's rights." *People v Bartlett*, 231 Mich App 139, 143-144; 585 NW2d 341 (1998).

In this case, defendant elected not to testify in his own defense. Therefore, the court should have read M Crim JI 3.3, which provides: "Every defendant has the absolute right not to testify. When you decide the case, you must not consider the fact that [he / she] did not testify. It must not affect your verdict in any way." (Bracketed material in original.) However, it is undisputed that this instruction was not given. Further, it is clear from the record that this was an oversight, not a strategic choice. For example, defense counsel stated multiple times during jury selection that the court would be instructing the jury that it could not use defendant's decision not to testify against him. Accordingly, the only dispute on appeal is whether there is a reasonable probability that the omission of this instruction affected the outcome of the trial.

In this case, there are three reasons why defendant cannot establish prejudice. First, the evidence against defendant was overwhelming. The victim unequivocally testified that defendant was the shooter, a small child who was in the van with defendant spontaneously told the police that defendant shot someone, and defendant's DNA was on the gun that was used to shoot the victim as well as the gun's magazine. Second, defense counsel discussed this issue at length with the venire during the jury selection process, explaining that defendant did not have to testify and that the jury could not hold his decision not to testify against him. This obviously should have also come from the court, but defense counsel hammered much more thoroughly than the model instruction that the jury could not penalize defendant for declining to testify. Defense counsel also expressly asked the jury if it understood defendant's right not to testify and whether it would hold his decision not to testify against him; the record does not provide any suggestion that any of the jurors expressed any hesitation about this concept. Third, the totality of the court's instructions adequately apprised the jury of who bore the burden of proof and what the appropriate

considerations were. The jury was instructed that defendant was presumed innocent and that the prosecutor was required to prove the elements of the crimes beyond a reasonable doubt. The court explained that "the defendant does not have to prove his innocence or produce any evidence." Finally, the court instructed the jury that its verdict must be based on the evidence and explained that "[e]vidence includes only the sworn testimony of witnesses, the exhibits admitted into evidence, and anything else I told you to consider as evidence." The court said nothing to suggest that defendant's silence could be considered as evidence.

In sum, while defense counsel erred by not procuring M Crim JI 3.3, this error did not affect the outcome of the proceeding.

### III. OV 19

Defendant argues that he is entitled to resentencing because the trial court erred by assessing 10 points for OV 19. We disagree.

The trial court's factual findings are reviewed for clear error and must be supported by a preponderance of the evidence. *People v Sours*, 315 Mich App 346, 348; 890 NW2d 401 (2016). "A sentencing court may consider all record evidence before it when calculating the guidelines, including, but not limited to, the contents of a presentence investigation report, admissions made by a defendant during a plea proceeding, or testimony taken at a preliminary examination or trial." *People v Johnson*, 298 Mich App 128, 131; 826 NW2d 170 (2012) (quotation marks and citation omitted). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Id*. (quotation marks and citation omitted).

Criminal defendants are entitled to a sentence that is based on accurate information and accurate scoring of the sentencing guidelines. *People v McGraw*, 484 Mich 120, 131; 771 NW2d 655 (2009). Sentencing courts must determine the applicable minimum sentence range under the sentencing guidelines and take such calculations into account when imposing a sentence; however, the guidelines are advisory only and not mandatory. *People v Lockridge*, 498 Mich 358; 870 NW2d 502 (2015). A defendant is entitled to resentencing if there is a scoring error that alters the defendant's recommended minimum sentence range under the guidelines. *People v Francisco*, 474 Mich 82, 89; 711 NW2d 44 (2006). In this case, it is undisputed that reducing defendant's score for OV 19 from ten points to zero would reduce his guidelines range, thereby warranting a new sentence.

OV 19 "is threat to the security of a penal institution or court or interference with the administration of justice or the rendering of emergency services." MCL 777.49. It is appropriate to assess 10 points for OV 19 if a defendant "interfered with or attempted to interfere with the administration of justice . . . ." MCL 777.49(c). "[T]he plain and ordinary meaning of 'interfere with the administration of justice' for purposes of OV 19 is to oppose so as to hamper, hinder, or obstruct the act or process of administering judgment of individuals or causes by judicial process." *People v Hershey*, 303 Mich App 330, 343; 844 NW2d 127 (2013). A defendant interferes with the administration of justice by taking actions "done for the purpose of hindering or hampering [a] police investigation." *People v Smith*, 318 Mich App 281, 286; 897 NW2d 743 (2016). "OV 19

is generally scored for conduct that constitutes an attempt to avoid being caught and held accountable for the sentencing offense. *Id.* (quotation marks and citation omitted).

The trial court did not err by assessing 10 points for OV 19 because the evidence supports an inference that defendant attempted to evade police, threw his gun out the window to keep the police from finding it, and told the van's driver not to give the police any information. Officer Taylor testified that he saw the van driving "fast and erratically" immediately after the shooting. The fact that Officer Taylor saw the van suggests that defendant might have seen the police car; regardless, defendant most likely knew that police assistance was en route because police had been summoned to assist with obtaining the lost phone. Additionally, according to the PSIR, the driver was interviewed and reported that defendant "entered the vehicle and stated, 'drive, I'm about to go to jail.' " There was evidence that defendant then tossed the gun out the van's window, and it is reasonable to infer that he did this so the police would not be able to find it. Finally, while the driver was speaking with a police officer, defendant instructed her, "Don't tell em shit." Defendant suggests on appeal that the record does not establish that he was talking to the driver; however, this is the only reasonable inference to be drawn from the circumstances because the driver and officer were standing right next to the police car in which defendant was detained while the driver was being asked about what happened.

All of these circumstances, taken together, support a finding that defendant was actively attempting to hinder the police investigation such that it was appropriate to assess 10 points for OV 19.

Affirmed.

/s/ Mark T. Boonstra
/s/ Michael J. Kelly
/s/ Allie Greenleaf Maldonado