*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

JOHN HENRY LEWIS,

        Defendant-Appellant.

UNPUBLISHED
May 05, 2026
10:48 AM

No. 366385
Berrien Circuit Court
LC No. 2022-001714-FH

Before: TREBILCOCK, P.J., and BOONSTRA and LETICA, JJ.

PER CURIAM.

Defendant appeals by right his jury trial conviction of delivery of methamphetamine, MCL 333.7401(2)(b)(*i*), and delivery of marijuana, MCL 333.7401(2)(d)(*iii*). The Berrien Circuit Court initially sentenced defendant with an enhancement for a second offense, MCL 333.7413, to 15 to 40 years' imprisonment for the methamphetamine conviction[1] and 2 to 8 years' imprisonment for the marijuana conviction. Defendant argues that he was denied the effective assistance of counsel when his defense counsel failed to introduce his codefendant's statements against interest, failed to inform defendant that the codefendant's statements might not be admitted into evidence, and failed to object to the prosecutor's rebuttal-argument reference to defendant's testimony about his criminal history. We affirm.

---

[1] Defendant was resentenced to 10 to 40 years' imprisonment on the methamphetamine conviction after the trial court found that the initial sentence was improperly enhanced on the basis of someone else's conviction for the use of cocaine in 2007, which was mistakenly attributed to defendant's criminal history. Defendant's issues regarding the trial court's sentence are the subject of a separate appeal.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

This case arises from defendant's delivery of a bag containing methamphetamine and marijuana to an undercover officer on behalf of his codefendant, Torey Blackamore. Defendant's sole defense at trial was that he did not know that the bag contained drugs.

During his arraignment on the two delivery charges, the trial court informed defendant that he was being charged as a second-offense offender because he had a previous cocaine-use conviction on or about March 13, 2007. Defendant disputed the conviction, explaining that he was in prison at that time, so the conviction must belong to someone else.

In January 2023, defense counsel engaged an investigator to interview Blackamore about defendant's role in the drug transaction. At that time, Blackamore was in jail for pending charges relating to his role in drug transactions with the same undercover officer who had received drugs from defendant. The investigator summarized Blackamore's statements in an investigative memorandum as follows:

> On 1/3/2023 at around 3:15pm I interviewed Torey Blackamore at the Berrien County jail. I asked Mr Blackamore if he knew John Lewis and he said he did not. Mr Blackamore was then shown a photograph of Mr Lewis by Atty Hampel and Mr Blackamore said that he did indeed recognize Mr Lewis. I asked Mr Blackamore if he ever had any dealings with Mr Lewis and he said not really, he knew Mr Lewis from around town. I asked Mr Blackamore if he had dealings with Mr Lewis on 5/5/2022? Mr Blackamore said that he did. I asked him to describe the dealings that day with Mr Lewis. Mr Blackamore said that he was at Union Park selling drugs. Mr Lewis happened to be sitting by him and Mr Blackamore asked Mr Lewis if he wanted to make some money and Mr Lewis agreed. Mr Blackamore said that he had a package that he told Mr Lewis to run across the park and give it to a white truck that was parked on Hurd Street. Mr Lewis took the package and ran it over to the truck and came back and was given $20 by Mr Blackamore. I asked Mr Blackamore if he told Mr Lewis what was in the package and he said he did not. I asked Mr Blackamore if the contents of the package could clearly be made out by anyone looking at it and Mr Blackamore stated that he couldn't remember what the package looked like so he couldn't be sure. I asked Mr Blackamore if there was anything else he wanted to add and he said he had nothing else for me. End of interview.

Defendant subpoenaed Blackamore to testify at defendant's trial. But on the day of trial, Blackamore asserted his Fifth Amendment right against self-incrimination and refused to testify. Seeing no other avenue for presenting the defense that defendant did not know that he was delivering drugs, defendant took the stand and testified against his counsel's advice. During his testimony, defendant explained, "I have one drug case in my whole life in 2007, and that was use of cocaine." In his closing rebuttal argument, the prosecutor referred back to that testimony:

> Now, whether or not he knew there were drugs in there or not, again, is all about how he acted, and reacted, and those circumstances. He did testify today

actually that he had a prior experience with drugs, use of cocaine. So, he's familiar with what drugs are, what drugs look like, in some fashion or form. And that's what was in that bag.

The jury delivered a guilty verdict on both counts of delivery.

Defendant moved for a *Ginther*[2] hearing and a new trial, arguing, in pertinent part, that he was denied the effective assistance of counsel when his defense counsel failed to introduce Blackamore's statements from the investigative memorandum into evidence after Blackamore became unavailable, failed to warn defendant of the risk that the jury might not hear those statements so that defendant could make an informed decision whether to proceed to trial, and failed to object to the prosecutor's reference to defendant's criminal history.

The trial court held both a *Ginther* hearing and a hearing on the motion for a new trial. The trial court did not make any relevant findings of fact or conclusions of law during those hearings, instead opting to enter a written order denying defendant's motion for a new trial. Regarding defendant's ineffective-assistance arguments, the trial court's entire discussion consisted of one sentence: "The Defendant has failed to establish ineffective assistance of trial counsel." This appeal followed.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant argues that his defense counsel was ineffective because he failed to introduce codefendant Blackamore's statements from the investigative interview or to warn defendant of the risk that Blackamore's statements might be excluded. We disagree.

## A. STANDARD OF REVIEW

"Whether a defendant received ineffective assistance of trial counsel is a mixed question of fact and constitutional law." *People v Armstrong*, 490 Mich 281, 289; 806 NW2d 676 (2011). The trial's court's factual findings are reviewed for clear error, and questions of constitutional law are reviewed de novo. *Id*. The decision to deny a motion for a new trial is reviewed for an abuse of discretion, which occurs when the trial court chooses an outcome falling outside the range of principled outcomes. *People v Miller*, 482 Mich 540, 544; 759 NW2d 850 (2008). "A trial court necessarily abuses its discretion when it makes an error of law." *People v Waterstone*, 296 Mich App 121, 132; 818 NW2d 432 (2012).

Both parties note that the trial court denied defendant's motion for a new trial without making any specific findings on the ineffective assistance claim. A trial court "must state its reasons for granting or denying a new trial orally on the record or in a written ruling made a part of the record," MCR 6.431(B), but it is not required to make any specific findings of fact or conclusions of law. "Findings of fact and conclusions of law are unnecessary in decisions on motions unless findings are required by a particular rule." MCR 2.517(A)(4). In this case, the trial court stated its reason for denying the motion in its written order: after the *Ginther* hearing, it

---

[2] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

concluded that defendant "failed to establish ineffective assistance of trial counsel."  Although our review could have benefitted from a more thorough analysis from the trial court, the written order complied with MCR 6.431(B).  The trial court made no findings of fact from the *Ginther* hearing for us to review for clear error, but we may still address defendant's ineffective assistance claims on the existing record.  See *People v Petri*, 279 Mich App 407, 410; 760 NW2d 882 (2008) ("A trial court's findings of fact, *if any*, are reviewed for clear error, and this Court reviews the ultimate constitutional issue arising from an ineffective assistance of counsel claim de novo.") (emphasis added).  It is not necessary to remand this case for the trial court to further articulate its reasons for denying the motion.

## B.  HEARSAY

Codefendant Blackamore's statements from the investigative interview were against his penal interest because he likely knew that they could be used against him in a trial or sentencing for his pending criminal case, but they were not admissible because (1) they were not sufficiently corroborated by evidence to make the statements trustworthy, and (2) they were nested within the investigator's out-of-court statements, which were also hearsay.

Hearsay is an out-of-court statement offered "to prove the truth of the matter asserted."  MRE 801(c)(2).  Hearsay is inadmissible unless the rules of evidence provide an exception.  MRE 802.  For example, hearsay is admissible if the declarant is unavailable to testify and the statement qualifies as a statement against interest.  At the time of defendant's trial, a "statement against interest" was defined as follows:

> A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability, or to render invalid a claim by the declarant against another, that a reasonable person in the declarant's position would not have made the statement unless believing it to be true.  A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.  [MRE 804(b)(3), as amended May 21, 2001, 464 Mich clxxviii-clxxix (2001)].[3]

---

[3] The Michigan Rules of Evidence were substantially amended on September 20, 2023, effective January 1, 2024.  See ___ Mich ___ (2023).  As amended, former MRE 804(b)(3) is now found at MRE 804(b)(4) and provides:

> (4) Statement Against Interest.  A statement that:

> (A) a reasonable person in the declarant's position would have made only if the person believed it to be true because, when made, it was so contrary to the declarant's proprietary or pecuniary interest or had so great a tendency to invalidate

A declarant is considered unavailable if he invokes the Fifth Amendment right against self-incrimination and refuses to testify. *People v Meredith*, 459 Mich 62, 66; 586 NW2d 538 (1998). However, "the mere fact that the declarant invoked his Fifth Amendment right not to testify does not make the statement against penal interest." *People v Barrera*, 451 Mich 261, 270; 547 NW2d 280 (1996).

In *Barrera*, the police investigated four men in connection with a victim's death from multiple stab wounds. *Id*. at 264. One of those men, Copeland, stated to the police that he was the only stabber. *Id*. at 265, 280. Copeland was later convicted of first-degree murder in a separate trial. *Id*. at 280. The other three codefendants were tried together. *Id*. at 265. Copeland was unavailable as a witness in their trial because he invoked his Fifth Amendment right not to testify. *Id*. The three codefendants sought to introduce Copeland's statement to the police under the "statement against interest" hearsay exception. *Id*. Our Supreme Court clarified when a statement qualifies as a statement against penal interest:

> [W]hether a declarant's statement was sufficiently against penal interest is whether the statement would be probative of an element of a crime in a trial against the declarant, and whether a reasonable person in the declarant's position would have realized the statement's incriminating element. If so, then the statement tended to subject the declarant to criminal liability. [*Id*. at 272.]

The Court concluded that Copeland's statements qualified as statements against his penal interest because, although the statements did not sufficiently establish every element of first-degree murder, they were "probative of many possible crimes," including possession and use of controlled substances, negotiating with a prostitute for a sex act, and stabbing the victim. *Id*. at 281-282.

The prosecutor argues in this case that codefendant Blackamore's statements from the investigative memorandum stating that he gave a package to defendant, told him to give it to a white truck, and paid him $20 without telling him about the contents of the package were not statements against Blackamore's penal interest because "[h]e could not be found guilty for any of those actions." But *Barrera* established that the statement "need not by itself prove the declarant guilty." *Id*. at 270-271. At minimum, Blackamore's statements were probative of his guilt for possessing a controlled substance in violation of MCL 333.7403 or for using defendant as his agent to deliver a controlled substance in violation of MCL 333.7401.

It is unclear whether Blackamore pleaded guilty to delivery of a controlled substance before or after he made the inculpatory statements during the investigative interview on January 3, 2023. But as of the trial on February 28, 2023, he had not yet been sentenced. If he had not yet entered a plea, then the statements could have been used against him at a trial. But even if he had already

the declarant's claim against someone else or to expose the declarant to civil or criminal liability; and

(B) must be supported by corroborating circumstances that clearly indicate its trustworthiness, if it tends to expose the declarant to criminal liability.

entered a plea, the statements could have been used against him at his sentencing. A reasonable person in Blackamore's position would recognize that making those statements to an investigator engaged by a codefendant's attorney would likely subject him to criminal liability for those statements. Under *Barrera*, 451 Mich at 472, these statements were against his penal interest.

Even if an unavailable declarant's statement is against his penal interest, it must be supported by corroborating circumstances that clearly indicate its trustworthiness to be admissible. MRE 804(b)(3), as amended May 21, 2001, 464 Mich clxxviii-clxxix (2001). This Court uses a balancing test when considering whether the corroborating circumstances are sufficient to justify admitting the statements. *Barrera*, 451 Mich at 279. There is an inverse relationship between "the defendant's constitutional right to present exculpatory evidence in his defense and the rationale and purpose underlying MRE 804(b)(3) of ensuring the admission of reliable evidence." *Id*. "[T]he more crucial the statement is to the defendant's theory of defense, the less corroboration a court may constitutionally require for its admission." *Id*. In this case, defendant's entire theory of his defense was that he did not know that he was delivering drugs. The circumstances of the delivery appeared extremely suspicious, and defendant planned for Blackamore's testimony to be the *only* evidence that defendant lacked knowledge of the drugs. Blackamore's statements in the investigative interview were important to the defense, so not much corroboration was required to admit them.

Codefendant Blackamore's statements, however, do not even meet that lowered threshold. Defendant argues that Blackamore's statements were partially corroborated by the trial testimony of two police officers: one testified that defendant's name was never mentioned in previous drug deals with Blackamore, and one testified that he could not see inside the black package that he received from defendant. But a statement is not corroborated just because it is somewhat consistent with other evidence. When determining the reliability of an out-of-court statement, a court must consider "its content and the circumstances *in which it was made*." *People v Dhue*, 444 Mich 151, 161; 506 NW2d 505 (1993) (quotation marks and citation omitted; emphasis added).[4] The police officers' testimony months after the investigative interview had no effect on the circumstances in which Blackamore made the statements and do little if anything to corroborate those statements.

Considering the statements and the circumstances surrounding the investigative interview itself, we conclude that there were insufficient corroborating circumstances to admit codefendant Blackamore's statements under the former MRE 403(b)(3). Although Blackamore voluntarily gave the statements and may have had no personal reason to try to help defendant, other circumstances more clearly indicate that the statements were unreliable. Notably, the interviewees

---

[4] *Dhue* was abrogated in part by *People v Taylor*, 482 Mich 368, 378-379; 759 NW2d 361 (2008), on the basis that "the holding in [*Dhue*] that a codefendant's nontestimonial statement is governed by *both* MRE 804(b)(3) and the Confrontation Clause is no longer good law," but it affirmed *Dhue*'s application of MRE 804(b)(3). Blackamore's statements were nontestimonial because they were made for defendant's investigative interview, not in any court proceeding or police interrogation. See *id*. at 377. Nontestimonial statements do not implicate the Confrontation Clause, so only the statements' admissibility under MRE 804(b)(3) is relevant in this case. See *id*. at 378.

were defendant's attorney and investigator, and Blackamore gave the least amount of information possible to get through the interview. Many of the statements were made in response to "yes or no," leading questions, so it would not be difficult for Blackamore to give the "right" answer, and Blackamore's incentive, if any, was simply to tell the attorney and interviewer whatever they wanted to hear. And when the investigator asked Blackamore if he had anything else to share, Blackamore said that he did not, so the investigator ended the interview. These circumstances undermined the reliability of Blackamore's statements, so we conclude that they were not admissible under "statement against interest" exception to the rule against hearsay.

Furthermore, defendant could not have admitted the statements from the investigative memorandum at trial because the investigative memorandum almost entirely consists of the investigator's statements *summarizing* codefendant Blackamore's statements, which is hearsay within hearsay. See *Solomon v Shuell*, 435 Mich 104, 128-129; 456 NW2d 669 (1990) (holding that a report summarizing a conversation between the report's author and another person was hearsay within hearsay). For hearsay within hearsay to be admissible, each layer of hearsay must conform with a hearsay exception. MRE 805. We find no other exception applicable to this case.

## C. PERFORMANCE AND PREJUDICE

Defense counsel was not ineffective for failing to request to admit codefendant Blackamore's statements because that request would have been futile, and his failure to warn defendant of the risk that Blackamore statements might not be admitted was not objectively unreasonable or prejudicial to the defense.

The Michigan and United States constitutions guarantee criminal defendants the right to the effective assistance of counsel. *People v Yeager*, 511 Mich 478, 488; 999 NW2d 490 (2023). See also US Const, Am VI; Const 1963, art 1, § 20. "Effective assistance of counsel is presumed, and a defendant bears a heavy burden of proving otherwise." *People v Putman*, 309 Mich App 240, 248; 870 NW2d 593 (2015). "In order to obtain a new trial, a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012).

In this case, codefendant Blackamore's statements did not fall into any exception to the rule against hearsay, so any motion to admit them would have inevitably failed. Defense counsel cannot be ineffective for his decision not to bring a futile motion. See *People v Riley*, 468 Mich 135, 142; 659 NW2d 611 (2003) ("Ineffective assistance of counsel cannot be predicated on the failure to make a frivolous or meritless motion.").

Defendant alternatively argues that his counsel was ineffective in failing to properly advise defendant of the risk that a jury might not hear codefendant Blackamore's statements. According to defendant, his counsel should have determined the risk that Blackamore would refuse to testify earlier so that defendant could make an informed decision whether to enter a guilty plea like his codefendants. At the *Ginther* hearing, defense counsel testified that he learned about two weeks before the trial that Blackamore would likely assert his Fifth Amendment rights and refuse to testify. About a week before the trial, defense counsel tried to reach out to Blackamore's attorney to discuss the matter, but Blackamore's attorney did not receive the call because his office lost

power, internet, and phone service after an ice storm. Defense counsel was not aware that Blackamore would actually refuse to testify until the day of the trial.

In hindsight, defense counsel could have consulted with Blackamore's attorney more than a month earlier, back when he conducted the investigative interview and listed Blackamore as a potential witness. But "[t]he Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight." *Yarborough v Gentry*, 540 US 1, 8; 124 S Ct 1; 157 L Ed 2d 1 (2003). Defense counsel was not privy to information about Blackamore's pending criminal case, so he could not have known the impact that Blackamore's statements might have on that case or whether Blackamore's attorney would advise him not to testify. In that regard, his decision to wait for defendant's and Blackamore's cases to progress further before addressing whether Blackamore would testify was not objectively unreasonable.

That decision also did not prejudice the outcome of defendant's case. Defendant asserts that he could have received a lighter sentence like other, similarly situated defendants if he also entered a guilty plea,[5] but instead he proceeded to trial because defense counsel led him to believe that codefendant Blackamore's statements gave him a strong defense. However, the timing of the proceedings in this case does not support that conclusion. Defendant rejected his plea offer and decided to proceed to trial at the preliminary examination on September 7, 2022, several months before the investigative interview on January 3, 2023. He informed the trial court that he had discussed his decision with defense counsel and that he understood that the prosecutor would withdraw the offer after the preliminary examination and would not extend another offer. Despite that testimony, defendant claims to have believed, on the basis of his previous experience in other criminal cases, that the prosecutor would extend a better offer if he set the case for trial.[6] Aside from any sentencing issues that form the subject of defendant's other appeal, the length of his sentence was caused by his unreasonable assumption that he could hold out for a better plea offer, not by his counsel's failure to advise him about the admissibility of statements that, at that point in time, Blackamore had not yet even made. Defendant was not denied the effective assistance of counsel on that basis.

---

[5] Three offenders, including Blackamore, were charged in connection with their roles in a larger drug-dealing conspiracy. They all entered pleas to delivery or possession charges and received much lighter sentences than defendant.

[6] Defendant speculates on appeal that the prosecutor might have made an exception to the deadline for plea offers if it came to light that the original plea offer was based on the erroneous belief that defendant was a subsequent drug offender. He states that "[t]he prosecutor has not presented any evidence that in Berrien County plea offers are never extended or negotiated based on additional information, circumstances or even convenience of the parties or the trial court." But in a claim of ineffective assistance of counsel, defendant has the burden of proof, not the prosecutor. See *Putman*, 309 Mich App at 248. Defendant likewise states without evidence that "plea agreements are routinely renegotiated regardless of cut-off dates based on new information." This was not a topic of discussion in the *Ginther* hearing, so defendant has not developed a sufficient factual record to support that argument.

## II. PROSECUTORIAL ERROR

Defendant next argues that the prosecutor erred when he referred to defendant's mistaken testimony about his criminal history during his rebuttal closing argument, and that defense counsel was ineffective for failing to object to that error. We disagree.

### A. STANDARD OF REVIEW

Generally, "[i]ssues of prosecutorial misconduct are reviewed de novo to determine whether the defendant was denied a fair and impartial trial." *Bennett*, 290 Mich App at 475. But because this issue was not preserved, it is reviewed for plain error affecting substantial rights. See *id*. "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *People v Carines*, 460 Mich 750, 765; 597 NW2d 130 (1999). "Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affect[ed] the fairness, integrity, or public reputation of judicial proceedings independent of the defendant's innocence." *Id*. (quotation marks and citation omitted; alteration in original).

### B. REBUTTAL ARGUMENT

The prosecutor's reference to defendant's mistaken testimony about having a previous drug charge does not support a claim of prosecutorial misconduct.

"[W]e consider issues of prosecutorial misconduct on a case-by-case basis by examining the record and evaluating the remarks in context, and in light of defendant's arguments." *People v Thomas*, 260 Mich App 450, 454; 678 NW2d 631 (2004). "Prosecutors are typically afforded great latitude regarding their arguments and conduct at trial. They are generally free to argue the evidence and all reasonable inferences from the evidence as it relates to their theory of the case." *People v Unger*, 278 Mich App 210, 236; 749 NW2d 272 (2008) (citation omitted). On the other hand, prosecutors "may not make a statement of fact to the jury that is unsupported by the evidence . . . ." *People v Ericksen*, 288 Mich App 192, 199; 793 NW2d 120 (2010) (quotation marks and citation omitted; alteration in original). Even if the prosecutor plainly erred, this Court may not reverse on that basis if "a curative instruction could have alleviated any prejudicial effect." *Bennett*, 290 Mich App at 476.

Prosecutors are expected to comply with the applicable rules of evidence, but failure to comply with the rules is not prosecutorial misconduct unless the prosecutor acted in bad faith. *People v Dobek*, 274 Mich App 58, 70; 732 NW2d 546 (2007). Defendant implies that the prosecutor's reference to defendant's testimony about his prior experience with drugs somehow implicated the rule against character evidence under MRE 404(a)(1) or the rule against using other crimes, wrongs, or acts to prove a person's character under MRE 404(b)(1). But the prosecutor's rebuttal argument did not implicate either rule because closing arguments are not evidence, and the trial court specifically instructed the jury that the lawyers' statements and arguments were not evidence and that the jury may only consider properly admitted evidence. See *Thomas*, 260 Mich App at 454 (holding that the same instruction was sufficient to eliminate prejudice from the

prosecutor's closing argument). Defendant also never argued that the prosecutor acted in bad faith when he commented on defendant's experience with drugs during his rebuttal argument.

The prosecutor's reference to defendant's experience with drugs was also a reasonable inference that was supported by the evidence. At trial, defendant testified: "I have one drug case in my whole life in 2007, and that was use of cocaine. That was 17 years ago." Later, he testified, "I've never been convicted of drugs." These statements were not inconsistent with each other because defendant referred to the 2007 offense as a "case," not a conviction. During his rebuttal argument, the prosecutor referred to that testimony: "He did testify today actually that he had a prior experience with drugs, use of cocaine. So, he's familiar with what drugs are, what drugs look like, in some fashion or form." The jury could make the same inference that defendant was familiar with drugs from previous experience. Defendant's testimony that he had a "case" for use of cocaine, combined with the fact that his actions during the delivery were consistent with common diversion tactics used in drug transactions, support the inference that defendant was familiar with how drugs are delivered. At that time, no one had discovered the error in defendant's criminal record,[7] but defendant's testimony was still evidence that the prosecutor could draw from in closing arguments. See *Unger*, 278 Mich App at 236. It was not prosecutorial misconduct to draw inferences from testimony that was only discovered to be false *after* the trial.

Even if the prosecutor had suspected that defendant's testimony was possibly mistaken because defendant had previously disputed the 2007 conviction during his arraignment, his decision to briefly reference the testimony in his rebuttal argument would not require reversal. The prosecutor presented strong evidence of the suspicious circumstances surrounding defendant's delivery of the package, including defendant's use of diversion tactics that the undercover officer identified as common behavior among participants of a drug transaction. The jury could have convicted defendant on that evidence even without any testimony about defendant's criminal history. Therefore, this case did not involve "an actually innocent defendant," and to the extent that the prosecutor's reference may be described as erroneous, that error did not seriously affect the fairness, integrity, or public reputation of the proceedings. *Carines*, 460 Mich at 765.

Because there was no prosecutorial misconduct, defense counsel was not ineffective for failing to object to the prosecutor's rebuttal argument because any objection would have been meritless. See *Riley*, 468 Mich at 142. And because defendant failed to meet his burden to prove that he was denied the effective assistance of counsel, the trial court's decision to deny defendant's motion for a new trial on that basis fell within a range of principled outcomes and was not an abuse of discretion.

Affirmed.

/s/ Mark T. Boonstra
/s/ Anica Letica

---

[7] Although defendant contested the 2007 conviction at his arraignment, the trial court did not investigate and correct the error until the *Ginther* hearing.